EDWARD F. GALLAGHER ET AL. V. ST. PATRICK'S CHURCH OF O'NEILL, NEBRASKA.

FILED JUNE 19, 1895.   No. 5907.

Building Contracts: CHURCH PROPERTY: INSURANCE: BREACH BY OWNER OF AGREEMENT TO INSURE: LOSS BY FIRE: LIA-BILITY OF SURETIES ON CONTRACTORS' BOND.  Meals & Mc-Vea, contractors, entered into a writing with St. Patrick's Church, in and by which they agreed to furnish the labor and material and construct for said church a certain building. The contract provided (a) that the building should be completed by December 31, 1890; (b) that, if the building should not be completed by that time, the contractors should forfeit to the church the sum of $10 for each day that the building remained unfinished thereafter; (c) that if the contractors should neglect or refuse to comply "with any of the articles of this agreement" the church might take possession of the premises, after giving three days' notice in writing, complete the building, and charge the cost thereof to the contractors; (d) that the architect should make estimates on the last days of August, September, October, and November, of the value of the material and labor furnished by the contractors, and the church at said dates should pay to the contractors three-fourths of the amount of such estimates; (e) that the church should protect by insurance to cover its interest in the property when payments had been made to the contractors.  To secure the performance of their agreement the contractors executed a bond to the church, signed by themselves as principals and a number of other parties as sureties. The building was not completed by December 31, 1890, and the contractors were proceeding with its construction on February 18, 1891 when it was totally destroyed by fire.  Prior to December 31, 1890, the church had paid to the contractors for labor and material the sum of $12,440.  Prior to the day of the destruction of the building, the church had paid to the contractors

$14,489.59. The church took out insurance on the property in the sum of $10,000 and no more. The church sued the contractors and the sureties on their bond to recover the money paid to the contractors under the contract. *Held*, (1) That the failure of the church to keep the building insured to the extent of its interest therein was a complete defense for the sureties on the bond of the contractors; (2) that the object of the provision in the contract requiring the church to insure its interest in the property was to lessen the risks taken by the sureties; (3) that the sureties were under no obligation to make inquiries from time to time to ascertain if the church had complied with its contract to insure its interest in the property; (4) that the sureties had a right to suppose that the church would comply with its contract in that respect, and that if the building should be destroyed before its acceptance by the church and they were called upon to and did make good the loss, they would be entitled by subrogation or otherwise to the benefit of the insurance effected on the property by the church; (5) that the question as to whether the destruction of the building was the result of the negligence of the contractors was an immaterial issue; (6) that the church could not excuse its failure to comply with its part of the contract on the ground that its performance would have been of no value to the sureties, because the loss of the building through the negligence of their principals would defeat a recovery of the insurance if it had been effected; (7) that its duty was to insure the property, and when the loss sued for occurred and was paid by the sureties, to transfer to them the insurance contracts, and leave the sureties and the insurance companies to litigate the question of the latter's liability; (8) that the fact the church was unable to procure responsible insurance companies to write insurance on the building to the extent of its interest therein did not relieve it from the performance of its agreement to insure the property to the extent of its interest; (9) that it is evident from the contract that it was within the contemplation of the parties thereto at the time it was made that the building might not be completed at the very day fixed by the terms of the contract, and that if it was not, the church had the option to permit the contractors to finish the work and to recover from them whatever damages the church might sustain by reason of the building not being completed in time, or the church might, at its option, exclude the contractors from any further connection with the work and complete it itself; (10) that the church by permitting the contractors, without protest or objection, to continue the work after the date when the building was to be completed, recognized the

contract as in full force, and as long as it was in force the church was under obligation to perform its part of it; (11) that by such act it waived, as it had a right to do, the completion of the building on the day named in the contract, and reserved the right to recover damages from the contractors for the delay.

Error from the district court of Holt county. Tried below before Bartow, J.

See opinion for statement of the case.

*B. G. Burbank,* for plaintiffs in error :

The church failed to keep its interest in the building insured as required by the contract, and the sureties are released. ( *Watts v. Shuttleworth,* 5 Hurl. & N. [Eng.], 235, 7 Hurl. & N. [Eng.], 353.)

*Kennedy & Learned,* also for plaintiffs in error:

Where a party has undertaken to do a thing, he is not excused from liability by the occurrence of events which render the performance of his promise impossible. *(School District v. Dauchy,* 25 Conn., 530; *Beebe v. Johnson,* 19 Wend. [N. Y.], 500.)

*R. R. Dickson* and *Blair & Goss,* also for plaintiffs in error,

*E. Wakeley, M. F. Harrington,* and *Thomas Carlon, contra,* cited in support of their argument on the question of insurance: 1 Wood, Fire Insurance, 377, 634, 817; *Cone v. Niagara Fire Ins. Co.,* 60 N. Y., 619 ; *Sansom v. Ball,* 4 Dallas [U. S.], 459; *Putnam v. Mercantile Marine Ins. Co.,* 5 Met. [Mass.], 386; *Imperial Fire Ins. Co. v. Murray,* 73 Pa. St., 13.

Ragan, C.

St. Patrick's Church is a religious corporation organized under the laws of the state and situate at O'Neill, Ne-

braska. Meals & McVea, in August, 1890, were contractors and builders, and will hereinafter be referred to as the contractors. In the said month of August said contractors entered into a written agreement with said church, in and by the terms of which they agreed to furnish all the material and erect an academy or school building for said church at said city of O'Neill, according to certain plans and specifications. The contract price for this building was $16,160.94. The contract contained the following provisions: (a) The architect was required to make estimates on the last days of August, September, October, and November, of the value of the material furnished and labor performed by the contractors towards the erection of the building, and thereupon the church was to pay to the contractors at said date three-fourths of the amount of such estimates; (b) the building was to be completed by December 31, 1890, at which time the church was to pay to the contractors the balance of the contract price; (c) that if the contractors "shall neglect and refuse to carry on the work at any time for two days in the manner required by the architect, or shall neglect or refuse to comply with any of the articles of this agreement," then the church "is hereby empowered to enter upon and take possession of the premises, with the materials and apparatus thereon, after giving three days' notice in writing," and complete said building, charging the costs thereof to the contractors; (d) that if the contractors should fail to complete the building by the time agreed they should forfeit and pay to the church the sum of $10 a day for every day that the building remained unfinished; (e) that "the owner, the church, shall protect by insurance to cover its interest when payments have been made to contractor." To secure their performance of this contract the contractors gave a bond to the church, signed by themselves and a number of other persons, hereinafter denominated the sureties. Immediately after the execution of this contract the

contractors began the erection of the building and continued working upon the same until February 18, 1891, when the building, almost completed, was wholly destroyed by fire.   Prior to December 31, 1890, the church had paid to the contractors for labor and material furnished by them towards the erection of said building the sum of $12,440. Prior to the time of the destruction of the building the church had paid to the contractors the sum of $14,489.59. The church took out insurance to protect its interest in the building being constructed to the extent of $10,000, and no more.   The church brought this suit in the district court of Holt county against the contractors and sureties on their bond, and in its original petition claimed a judgment for the sum of $14,489.59, the total amount paid by the church to the contractors prior to the destruction of the building, but by an amended petition, on which the action was tried, the church claimed a judgment for the sum of $12,440, the amount paid by it on the contract prior to December 31, 1890.   The contractors were not served with process in the action and made no appearance therein. The church had a verdict and judgment against the sureties, to reverse which they have prosecuted to this court a joint petition in error.

There are numerous assignments of error here that the district court erred in giving all of certain named instructions and that it erred in refusing to give all of certain named instructions.   We have examined these instructions so far as to discover that some of the instructions given by the court were properly given, and that some of the instructions refused by the district court were properly refused.   The assignments of error, then, as to the giving and refusing of instructions are overruled.

Certain assignments of error relate to the action of the district court in the admission and rejection of evidence, but in view of the conclusion reached by us these assignments will not be noticed.

One of the defenses interposed to the action was that the church had failed and neglected to insure the building to the extent of its interest therein according to the terms of the contract, and that such failure and neglect on the part of the church had released and discharged the sureties. The church met this defense by replying that it had no insurable interest in the building being constructed, and that the amount of insurance which it had taken out on the building was as large a sum as was practicable, or as any responsible insurance company would carry. It is not disputed that the church never had over $10,000 of insurance on this property. The allegations in the church's reply that it had no insurable interest in the building being constructed is not urged by its counsel here. Is the failure and neglect of the church to insure the building to the extent of its interest therein a defense to these sureties? In *Watts v. Shuttleworth*, 7 Hurl. & N. [Eng.], 253, a contractor had agreed to furnish the material and to "execute the fittings of the first and second floors of a warehouse for the owner" by a certain date, and for a certain sum, payable in installments of not less than twenty per cent as the work progressed. The contractor further agreed that he would provide a store-room for the express purpose of the reception of the fittings from time to time as they were completed and until they were ready to be used in the warehouse; and the contract further provided that the owner should insure these fittings from risk or accident by fire. The contractor entered upon the performance of his contract, and, it appears, had a large number of fittings completed and stored; and while thus in store, and before they were placed in the warehouse, the fittings were destroyed by fire. The owner had neglected to take out any insurance on the fittings. The contractor failed to perform his contract, became insolvent, and the owner brought this suit on the bond to recover the amount of money which he had paid the contractor on the contract. The surety on the con-

tractor's bond interposed the defense that the owner had failed and neglected to insure the fittings as he had agreed. The court, in discussing this defense, said: "The substantial question in the case is, whether the omission to insure discharges the defendant, the surety.   The rule upon the subject seems to be that if the person guarantied does not act injurious to the surety, or inconsistent with his rights, or if he omits to do any act which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged." Judgment was entered for the surety. This judgment was affirmed on appeal, the court holding that the owner was bound to insure the fittings, and that his omission to do so discharged the defendant's liability, not merely to the extent of the benefit he would have derived from the insurance if effected, but *in toto*. (See *Watts v. Shuttleworth*, 7 Hurl. & N. [Eng.], 253.) Applying the rule announced by these cases to the facts of the case at bar we conclude that the failure of the church to insure its interest in the building being constructed is a complete defense for the sureties on the bond of the contractors. To overthrow this defense counsel for the church make several arguments.

The first argument, as we understand it, is that the only damages which the sureties and contractors suffered by reason of the failure of the church to insure its interest in the property is the amount of premium which it would have required to effect this insurance; that the contractors, having ascertained that the church had not insured the property to the extent of its interest, should themselves have taken out the insurance and charged the cost thereof to the church.   We do not think this argument is tenable, whether applied to the contractors or sureties, but we are quite clear that it is not sound when applied to the latter. The very object of having the church insure its interest in the property was to lessen the risks taken by the sureties. The sureties were under no obligations to make inquiries

from time to time to ascertain if the church had complied
with its contract to insure its interests in this property.
They had a right to suppose that the church would com-
ply with its contract in that respect; and that if the build-
ing should be destroyed before its acceptance by the church,
and they were called upon to make good the loss, they
would be entitled, by subrogation or otherwise, to the benefit
of the insurance effected on the property by the church.
By the terms of the contract it was the duty of the church
to keep this property insured to the extent of its interest
in it. On December 31 it had an interest in the property
to the extent of $12,440. When the property was de-
stroyed its interest in the property was $14,489.59, or a
sum greater than the judgment rendered against the sure-
ties. By the express terms of the contract it was the duty
of the church to keep this property insured to the extent
of its interest therein, and had it done so, and had the prop-
erty been destroyed as it was, the sureties, on paying the
judgment here, would have been entitled to an assignment
of the insurance policies, by subrogation or otherwise, to
reimburse themselves for their loss.

Another argument is that the destruction of this build-
ing was the result of the negligence of the contractors, and
that, therefore, they and their sureties are estopped from
insisting upon the defense that the church failed to insure
the property to the extent of its interest therein. The re-
ply pleaded by the church to the defense of its failure to
insure the property has already been set out. In this reply
the church did not plead as an estoppel against the sureties
that the property had been destroyed through the negligence
of the contractors. It seems, however, that the question
as to whether the destruction of the building was the re-
sult of the negligence of the contractors was made an im-
portant question before the jury. We are at a loss to
understand how this question could have been material
under the pleadings in the case. The sureties by their

contract agreed that the contractors should furnish material and erect this building according to the plans and specifications and turn it over to the church. The building having been destroyed before it was delivered to the church, the liability of the sureties attached, and whether the building was destroyed by fire, or the act of God, or otherwise, afforded them no defense. (*School District v. Dauchy*, 25 Conn., 530.) It is argued that the destruction of the building by the negligence of the contractors would be a defense to the insurance company in a suit against it on the insurance policies, had the church taken them out; but it is sufficient answer to this argument to say that that is not the case on trial. Whether the negligence of the contractors would be a defense for the insurance companies when sued upon the policies is to be determined when such defense is presented by the insurance companies in such suit. The church cannot excuse its failure to comply with its part of the contract by saying that its performance would have been of no value to the sureties. Its duty was to insure the property, and when the loss sued for occurred and was paid by the sureties, to turn over to them the insurance contracts and leave the sureties and the insurance companies to litigate the question of the latter's liability.

Another argument of the church is that the amount of insurance that it effected on the property was as much as any responsible insurance company would insure the property for. This, as already seen, was a part of the reply of the church to the defense of its failure to insure the property. We do not think this reply a good one in this respect. The church unconditionally contracted to insure the building to the extent of its interest. Having made this agreement, it was bound to perform it; and the fact that it was unable to procure insurance companies to write insurance on the building to the extent of its interest therein does not relieve it from the performance of its agreement. (*Beebe v. Johnson*, 19 Wend. [N. Y.], 500.)

The final argument relied upon by counsel for the church to overthrow this defense is that since by the terms of the contract the building was to be completed and delivered to the church by December 31, and that as it was not finished by that time, the building from that date was at the sole risk of the contractors. This argument, in effect, is that because the contractors failed to complete the building by December 31 the church was released from its part of the contract to keep its interest in the building insured. To sustain this argument it is insisted that the church never granted to the contractors any extension of time for completing the building beyond December 31. Under the contract, if the building was not completed by December 31, the contractors were to forfeit to the church the sum of $10 per day for each day it remained unfinished; and the contract further provided that in case the contractors failed to comply with "any of the articles of this agreement," one of which was to complete the work as agreed, the church might take possession of it after giving certain notice thereof to the contractors. Reading these two provisions of the contract together, it is evident that it was within the contemplation of the parties at the time the contract was entered into that the building might not be completed at the very day fixed by the terms of the contract, and that if it was not, the church should have the option to permit the contractors to finish the work and to recover from them whatever damages it might sustain by reason of the building not being completed in time; or the church might, at its option, exclude the contractors from any further connection with the work and complete it itself. The building was not completed by December 31, but after that date the contractors were allowed to continue the work without protest or objection, or, at least, the church did not exercise its right to exclude the contractors from the work and finish it itself. After December 31 the church paid to the contractors for labor and material furnished for this building after that date some-

thing over $2,000. By these acts the church recognized the contract as in full force; and as long as the contract was in force, it was under obligation to perform its part of it. It is very strenuously insisted by counsel for the church that the payments made to the contractors for labor and material furnished after December 31 were made without any authority from the church and not binding upon the church, and that, therefore, the contract was not extended after December 31. It appears from the record that the party who made the payments after December 31 on behalf of the church is the same party who made the payments before that time; but we do not think it is material here whether there was a valid agreement entered into between the church and the contractors to extend time for the completion of this building. By the contract the church had the option, when the 31st of December passed and the building was not completed, to charge the contractors with the penalties provided in the contract for non-completion of the building on time, or to declare the contract at an end so far as the connection of the contractors with the work was concerned, take possession of the building, and finish it itself. It did not exclude the contractors from the work, nor attempt to do so. It permitted them to go on and furnish labor and material, and it made payments to them for such labor and material, and it thereby elected to regard the contract as in full force and effect, and waived, as it had a right to do, the completion of the building on the day named in the contract, reserving the right to recover damages from the contractors for the delay. We conclude, therefore, that the failure of the church to keep the property insured to the extent of its interest therein was a complete defense to the sureties on the bond of the contractor, and that the judgment rendered against the sureties is contrary to law. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.