BURT COUNTY, APPELLEE, V. JOHN LEWIS ET AL.,
APPELLANTS.

FILED MAY 17, 1913. No. 17,188.

1. Contracts: CONSTRUCTION. A contract for the excavation of a ditch,
at a certain price per cubic yard of dirt, provided, "when one-
fourth of the work provided for in this contract is completed
according to the terms hereof, and to the satisfaction of the
engineer in charge," the engineer should make an estimate and
75 per cent. of the price fixed per cubic yard should be paid. The
ditch was not excavated to the bottom by the contractor, but as
the work progressed estimates were made and 75 per cent. of the
contract price per yard excavated was paid. *Held,* Under such a
provision in the contract, the completion of one-fourth of the
work does not mean the actual completion to the bottom of the
ditch of one-fourth of its lineal distance without regard to the
quantity of dirt removed, but means one-fourth of the work of
removing and placing the dirt, as directed by the plans and
specifications, and, there being nothing in the contract or bond
to forbid, the county had the right to pay as it did.

2. Principal and Surety: LIABILITY OF SURETY. Where a party to a
contract with a county board makes a written request for an
extension of time, and the board grants the extension, making
the proceedings a matter of record, and indorsing the extension
on a written request, sureties upon the bond of the contractor,
which bond provides that any departure from the strict terms
of the contract "which is made under a written agreement of
both parties to said contract shall not invalidate this undertaking
nor release the sureties," have no cause for complaint, and are
not released.

APPEAL from the district court for Burt county: ABRA-
HAM L. SUTTON, JUDGE. *Affirmed.*

*Thomas R. Ashley* and *Brome, Ellick & Brome,* for ap-
pellants.

*James A. Clark, contra.*

LETTON, J.

In 1905 the county board of Burt county entered into
a contract with defendant Lewis for the excavation of a

drainage ditch.   The work was let in four separate con-
tracts, one providing that the portion of the work in-
cluded therein should be paid for at 9 cents per cubic yard
of excavation; the other contracts being alike in all re-
spects, except as to location of the work and price per
cubic yard.   Defendants Griffin, Byram and Watson be-
came sureties upon the bond given by Lewis to the county
for the faithful performance of the work.   Lewis began
the work of construction, but, being unable to complete
it within the time fixed in the contract, requested the
county board for an extension of time to January 1, 1906,
which was granted.   On December 16, 1905, Lewis re-
quested another extension until November 1, 1906, which
was also granted.   The request of Lewis was made in
writing, and the action of the county authorities granting
the request is shown by the papers on file in the office of
the county clerk and by the record of the proceedings of
the board.   This extension to November 1, 1906, was the
last extension allowed by the county authorities.   A
formal resolution of the board declaring the contract for-
feited was passed on June 23, 1908.   Lewis excavated
56,606 cubic yards of dirt under the four contracts, and
was paid therefor the sum of $4,405.79.   There were still
19,765 cubic yards of earth remaining to be excavated.
The county, after having complied with the requirements
of the statutes as to advertising, etc., entered into a new
contract with another person to finish the work at an in-
creased cost over the contract price.   The additional cost
and expenses, after applying the money retained under
the terms of the contract as found by the district court,
was the sum of $794.45.   Judgment for this sum was ren-
dered against the principal and sureties, upon the bond,
and the sureties appeal.

The only errors assigned are that the finding and judg-
ment are contrary to the evidence, not sustained thereby,
and contrary to law.

The contract provides that, when a part not less than
one-fourth of the portion included in any contract is com-

pleted according to the specifications, he (the engineer) shall give the contractor a certificate thereof showing the proportionate amount which the contractor is entitled to be paid according to the terms of the contract, and the county clerk shall, upon presentation of such certificate, draw his warrant upon the treasurer for 75 per cent. of said amount, and the treasurer will pay the same. The ditch contracted for in the four contracts was over three miles in length. At the time the contract was canceled and the work relet only about 1,100 lineal feet had been fully completed.

The appellants contend that the language of the contract prohibits the payment of any money until one-fourth of the ditch had been wholly completed, and does not mean when one-fourth of the excavation had been made; that, since it costs more to remove the lower strata of dirt from the excavation than the top layers, the county had no right to pay full price for the dirt excavated from the top. The evidence shows that it is more costly to remove the lower portion of the excavation than the upper with the appliances that this contractor was using, but it is also shown that by using a dredge the cost of the entire excavation would be about the same without reference to the depth; that the use of a dredge was practicable, and that one was used in finishing the work. Even if it were true that it cost more to remove the lower strata than the upper, since the contract makes no distinction as to price in this respect, the estimate by yardage without reference to depth could not be a breach thereof, and the sureties cannot complain. The "work" mentioned in the contract is evidently the work of excavation. The whole work to be done was of this nature, and it seems to have been quite uniform in character. Any other interpretation of the meaning of the contract might lead to a result more detrimental to the sureties than the one adopted. If lineal distance of the completed ditch were to be taken as the test, the money might be payable when but a comparatively insignificant portion of the whole excavation had

been made. Under this theory the Panama canal might be said to be one-fourth completed when the level lands were excavated and while the shovels had barely scratched the surface of the Culebra hills. We think the estimate was properly made.

Appellants also contend there was a material variation in the contract, because it was extended without their knowledge or consent. The statute allows extensions to be made by agreement not to exceed two years. The bond itself provides that any departure from the strict terms of the contract made under a written agreement of the parties shall not release the sureties. The extension was made by a written request and a written consent to the same, hence it was within the terms of the bond. The last extension of the contract expired on November 1, 1906, and the rights and liabilties of the sureties became fixed. The county, therefore, could not increase the liability of the sureties by any interference with the work to their detriment. Nor did it do so. The evidence shows that further work was performed by the contractor, 75 per cent. of which was paid for at the contract price. This was for the direct benefit of the sureties, since the cost per cubic yard of completing the unfinished work under the new contract was in excess of the original price. The cases cited by appellant, *Brennan v. Clark*, 29 Neb. 385, *Gallagher v. St. Patrick's Church*, 45 Neb. 535, and *Bell v. Paul*, 35 Neb. 240, are not strictly in point, since no infringement of or material change in the terms of the contract has been shown, while such was the fact in the cases mentioned.

We find no error in the record. The judgment of the district court is

AFFIRMED.

REESE, C. J., ROSE and FAWCETT, JJ., concur.

BARNES, SEDGWICK and HAMER, JJ., not sitting.