UNITED STATES FIDELITY & GUARANTY CO. v. PARSONS et al.*

(Division A. March 21, 1927. Suggestion of Error Overruled May 9, 1927.)

[112 So. 469. No. 25685.]

1. REFORMATION OF INSTRUMENTS. *Long failure to notice mistake of surety bond, omitting "Mrs," and referring to contract by wrong date, does not prevent reformation.*

Mistake whereby "Mrs." was omitted from name in bond of surety company and contract was referred to by wrong date, being mutual, will be corrected, notwithstanding failure to notice it for several months.

2. CONTRACTS. *Building contractor held not relieved from duty to rebuild, in case of fire before completion, by provision that owner carry insurance.*

That building contract provides that owner shall carry fire insurance and contractor pay *pro rata* of cost does not raise an exception to the rule that contractor must rebuild if building, before completion, is destroyed by fire.

3. EQUITY. *Grounds of general demurrer, not going to whole bill, held properly overruled.*

The overruling of grounds of general demurrer not going to the whole bill *held* proper.

4. PRINCIPAL AND SURETY. *Bill in suit on contractor's bond held not to show too large progress on payment for material.*

Bill in suit on building contractor's bond *held* not to show violation by overpayment of provision of contract to pay contractor not to exceed eighty-five per cent of value of material as delivered.

5. DAMAGES. *On contractor refusing to rebuild on burning of building before completion, reasonable fees for supervision of new construction are allowed owner.*

Where contractor on burning of building before completion refuses to rebuild, owner doing so is entitled to allowance against contractor of reasonable fees for supervision of construction of new building.

6. DAMAGES. *Rent for reasonable time held allowable against contractor refusing to rebuild on burning of building before completion.*

Where building is burned before completion and contractor refuses to rebuild, owner can recover of him for loss of rents for such reasonable time after the time the building should have been completed under the contract as will permit owner to complete building, acting promptly.

7. INSURANCE. *Contractor and his surety, and not owner, held entitled to excess of insurance above cost of building destroyed before completion.*

Under building contract requiring owner to carry fire insurance on the building, contractor to pay his *pro rata* of costs, contractor and his surety, and not owner, *held* entitled to excess of insurance above costs of building destroyed before completion and to have it applied to cost of new building demanded under the contract.

March, 1927] U. S. Fid. & Guar. Co. *v.* Parsons. 337

147 Miss.]                    Brief for Appellant.

8. Constitutional Law. *Mechanics' liens. Liberty of contract held not abridged by statute providing if owner shall take bond from building contractor it shall, subject to obligee's rights, inure to benefit of laborers and materialmen (Laws Miss. 1918, chapter 128, section 3; Constitution U. S. Amendment 14).*

Laws Miss. 1918, chapter 128, section 3, providing that when a contractor entering into building contract shall enter into bond with the owner it shall inure to benefit of laborers and materialmen subject to obligee's rights, does not unduly abridge liberty of contract, in contravention of Constitution U. S. Amendment 14, but is within the police power.

*Corpus Juris-Cyc. References: Building and Construction Contracts, 9CJ, p. 805, n. 63; p. 806, n. 71; p. 812, n. 30, 39; p. 816, n. 69; Constitutional Law, 12CJ, p. 949, n. 9, 10, 11, 13; p. 1249, n. 40; Damages, 17CJ, p. 847, n. 60; p. 848, n. 61; Equity, 21CJ, p. 449, n. 67; Fire Insurance, 26CJ, p. 440, n. 99; Mechanics' Liens, 40CJ, p. 46, n. 6; Principal and Surety, 32Cyc, p. 127, n. 72; Reformation of Instruments, 34Cyc, p. 915, n. 86; p. 926, n. 46; p. 966, n. 76; On necessity that mistake be mutual in order to justify reformation in instrument, see annotation in 26 A. L. R. 501; 23 R. C. L. 327; 3 R. C. L. Supp. 1324; 4 R. C. L. Supp. 1500; 5 R. C. L. Supp. 1241; 6 R. C. L. Supp. 1372; As to whether destruction of building in course of construction will excuse nonperformance of contract, see 6 R. C. L. 1008; 4 R. C. L. Supp. 457; As to the constitutionality of a statute requiring a bond to protect laborers and materialmen upon entering a building contract, see annotation in L. R. A. 1918A, 1199.

Appeal from chancery court of Warren county.

Hon. R. B. Anderson, Special Chancellor.

Suit by Mrs. Edna Earl Parsons against the United States Fidelity & Guaranty Company and others. From a decree overruling the named defendant's general demurrer, it appeals, and from part thereof sustaining a special demurrer of said defendant, complainant appeals. Affirmed and remanded.

*R. L. McLaurin, Wm. M. Hall,* and *A. A. Chaney,* for appellant.

I. The ninth ground of the general demurrer alleged that the bill of complaint and exhibits show on their face that the complainant and J. W. McNeill accepted and retained the bond as executed without complaint,

objection or notice and there was no objection that it was not written as intended until after the fire; hence both the complainant and the principal in the bond, J. W. McNeill, are charged with notice of its contents and are estopped from claiming any reformation or any rights except those shown on the face of the document.

The court will bear in mind that the contract was dated June 19, 1924; the bond dated July 7, 1924; and the fire occurred on November 3, 1924, during all of which time these instruments, the contract and the bond, were in the possession of the complainant and that she without any examination or reference thereto "relied on them as being correctly made out" until after the house was destroyed by fire several months thereafter, the bond having been in her possession four months and the contract almost five months before "the error and mistake" was discovered. In support of appellant's contention, see *Grimes* v. *Saunders,* 93 U. S. 55; 23 R. C. L., page 351, section 47.

In this connection our own court has held that one who accepts an insurance policy is bound to know and is chargeable with its contents. *Life Ins. Co.* v. *Bouldin,* 100 Miss. 677. The identical question here involved was settled by our court many years ago in *Rosenstock* v. *Miss. Home Ins. Co.,* 82 Miss. 674. See, also, Am. & Eng. Ency. of Law (2 Ed.), page 831; Elliott on Contracts (last edition), section 2377; *Home Mut. Fire Ins. Co.* v. *Pittman,* 111 Miss. 420; *Hartford Fire Ins. Co.* v. *McCain,* 106 So. 529; *Bostwich* v. *Mut. Life Ins. Co.,* 116 Wis. 392; *Graham* v. *Berryman, etc.,* 19 N. J. 29; *Bainfield* v. *Bainfield,* 24 Ore. 571. See, also, in this connection the numerous citations in 9 Rose's Notes, page 254, particularly the case of *Grieve* v. *Grieve,* 15 Wyo. 356, 11 Ann. Cas. 1162, where the court refused to reform an instrument where plaintiff negligently refused and failed to read it. See, also, *Upton* v. *Tribilcock,* 91 U. S. 45; 24 Am. & Eng. Ency. of Law (2 Ed.), 657.

II.   The owner accepted the insurance in lieu of con-
tract for new building.   It is unquestionably true that
where a contractor engages to erect a building on the
land of another and to furnish the material and labor
therefor, the destruction of the building by accident or
design will not relieve him of his obligation.   However,
this rule prevails only where there is no exception or
limitation in the building contract.   This rule is an-
nounced in many authorities and we find it well expressed
in *Butterfield* v. *Byron*, 153 Mass. 517, 25 A. S. R. 655.
The same principle is announced in *Milske* v. *Steiner*,
5 L. R. A. (N. S.) 1105; 6 R. C. L., page 997, section 369.

The supreme court of Mississippi refused, many years
ago, to apply this general rule if an exception of some
kind could be found on the face of the contract to build.
*Jamison* v. *McDaniel*, — Miss. —; *Harmon* v. *Fleming*,
25 Miss. 135; *Mitchell* v. *Hancock County*, 91 Miss. 414.

The provision requiring the owner to take out fire in-
surance in proportion to his interest in the building nec-
essarily implies that the owner would and did take title
to and dominion over the work that had been done; that
is, his interest in the building increased daily as the work
progressed and when the partly constructed building
was destroyed by fire, the insurance received from the
policy took the place of and stood in lieu of the building
and the owner presumably, has gotten full value of the
property.

The surety company, it must be presumed, would not
have signed the bond except for the provision requiring
that insurance be carried on the building as the work
progressed.   By this means the surety company sought
to protect itself against this contingency and to exempt
itself from any loss that might be occasioned by fire.
There is no other reasonable or logical construction that
could be placed upon this provision in the contract.   *Piag-
gio* v. *Somerville*, 119 Miss. 6; *G. & S. I. R. R. Co.* v.
*Horn*, 135 Miss. 804; *Roland* v. *Lindsey*, 104 Ark. 49, Ann.
Cas. 1914C 332; Story's Equity Jurisprudence, section

340 U. S. Fid. & Guar. Co. *v*. Parsons. [Sup. Ct.

Brief for Appellant. [147 Miss.

325; 32 Cyc., pages 176-177; *Gallagher* v. *St. Patrick's Church,* 45 Neb. 535, 63 N. W. 864; *Hohn* v. *Shideler,* 72 N. E. 575; 9 C. J. 857, sub-section B; note in Ann. Cas. 1914C 336.

III. It was error to charge the contractor with *pro rata* of insurance premium and yet deny him all benefits therefrom. A failure on the part of the contractor to pay his part of the insurance premium does not constitute a breach of the builder's contract; but, if anything, only creates a liability against him for his *pro rata* of the premium.

The owner having collected the twelve thousand five hundred dollars in full and retained it, necessarily accepted it in lieu of the building. In other words, the owner took and retained the fund that was created for the sole purpose of protecting the contractor and his surety, and not only seeks to have the contract breached for the failure of the contractor to pay one hundred twenty-six dollars of the insurance premium, but demands as well a new building and without tendering to the surety and contractor the fund created by contract for their protection.

IV. The bill of complaint seeks to show a breach of the building contract because of non-payment by the contractor of claims for labor and material, but it does not show that these debts in favor of the laborers and materialmen would be a debt against the owner or a lien against the building. The building had been destroyed by fire and there could, therefore, be no lien against it for labor and material furnished in its construction. Nor could there be any debt against the owner for labor and material. Nor could the laborers and materialmen fix a lien on the land where the house would have stood had it been built. Therefore, we submit, the averments in the bill to the effect that there are outstanding bills for labor and material show no breach of the contract.

V.   The bill of complaint shows that the complainant breached the contract with the surety by failing to reserve fifteen per cent of the cost of materials.   This was a ·material breach.   This question appears to have been conclusively settled by our court in *Picard* v. *Shants,* 70 Miss. 381.

The above authority from our own court is conclusive, but we might add that it is in harmony with an unbroken line of decisions from the United States supreme court, the circuit court of appeals, and various state courts. *Prairie State Bank* v. *U. S.,* 164 U. S. 239; *Fidelity & Deposit Co.* v. *Agnew,* 152 Fed. 955.

VI.  Complainant seeks to recover six hundred sixty dollars which is alleged to have been paid a supervising architect for the erection of the second building, and we submit that under the terms of the contract the builder, McNeill, never undertook to assume the expense of a supervising architect, and that this demurrer should have been sustained.

Complainant further seeks to recover four hundred seventy-five dollars as a fair rental value on account of failure of the respondents, McNeill, contractor, and the surety to construct, complete and deliver the house within a reasonable time.   The complainant should not be entitled to recover for this item for the reason that the bill of complaint shows no legal or equitable right to recover, it appearing that the original building was destroyed by fire a few days before the contractual limit for completion of the building, and the surety could not be liable for loss of rental value, the owner having collected and retained all of the insurance in lieu of the building.

VII.   Section 3, chapter 128, Laws of 1918, is unconstitutional, being a limitation and a restriction on the right of the surety company to contract and to do business with whomsoever it pleases.   The legislature has no

342    U. S. Fid. & Guar. Co. *v.* Parsons. [Sup. Ct.

Brief for Appellant.    [147 Miss.

right to add new parties to bonds or to this bond in question without the consent of the surety company, denying to the surety company the right to say or to know with whom it is contracting. This act *is* violative of the Fourteenth Amendment to the Constitution of the United States, and also of sections 16 and 24 of the Constitution of Mississippi.

The statute in question seeks to write into every contract, the provisions of the contract to the contrary notwithstanding, absolute and unconditional liability of the surety for all labor and materials furnished in the construction of the building. A statute with such provisions, we say, unquestionably abridges the privilege of citizens of the United States and deprives them of property without due process of law. All men have and should have the right of acquiring, possessing and protecting property and property rights and the section of the constitution above referred to provides "that no person shall be deprived of his property without due process of law." This right is seriously invaded if a citizen is not at liberty to contract with whomsoever he pleases and upon such terms and conditions as he may prescribe.

It may be said that the right of contract is subject to police regulations; but as it has been held, the police power cannot be made a cloak under which to overthrow or disregard constitutional rights. The statute in question was not enacted for the general welfare of the public.

The supreme court of California has repeatedly passed on a statute identical in principle with the statute here involved and it was held to be unconstitutional. *Gibbs* v. *Talley,* 65 Pac. 970; *Shaunessey* v. *Am. Surety Co.,* 69 Pac. 250.

The supreme court and the court of civil appeals of Texas have declared unconstitutional a similar statute to the California statute and the Mississippi statute. *Equitable Surety Co.* v. *Stemmons,* 239 S. W. 1039; *Wright* v. *McAdams Lbr. Co.,* 218 S. W. 571; *Cobb* v.

*Allen,* 231 S. W. 829; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

Certainly, the right to make contracts is a property right. When this right is denied by statute it comes in conflict with the provisions of the constitution.

*Wm. I. McKay,* also, for appellees.

Appellant takes the position that the provision in the building contract requiring the owner to insure the building negatives the admitted legal obligation of the builder to restore the building in the event of its destruction by fire, and that the insurance stood in lieu of the building. This position is wholly untenable. The contract does not so provide, nor can it be so distorted or misconstrued. The only evident and exclusive purpose and function of the provision for insurance was the protection of the respective interests of the contractor and owner in the building. The very outside limit of any legal or equitable interest that the contractor could have possibly had in the building at any time or under any conceivable circumstances was only, and no more than, the earned portion of the contract price less all progress installments paid thereon. *S. Anderson & Son* v. *Shattuck,* 81 Atl. R. 781, a case perfectly in point.

The additional and express provision in the contract that the contractor should pay his *pro rata* part of the cost or premiums for this protection necessarily means that its benefits were to be likewise prorated, as the respective interests of the parties might be. Proration of premiums means proration of protection. Moreover, the contractor has received nine thousand one hundred eighty-five dollars and twenty-six cents from the insurance funds, lacking only seventy-nine dollars and seventy-four cents of being the total contract price of nine thousand two hundred and sixty-five dollars and the contractor still owes Mrs. Parsons one hundred twenty-six dollars and seventy-six cents for his *pro rata* part of the

premium for the part of the proceeds that he has received, which more than offsets the seventy-nine dollars and seventy-four cents, the balance of the contract price for a completed and delivered building, And notwithstanding this, appellant says, that Mrs. Parsons retained all of the insurance fund. This statement is wholly inaccurate. She retained only her legal and equitable part of the insurance fund, her *pro rata* part according to her clear interest in the building as owner, and she paid or gave credit to the contractor for nine thousand one hundred eighty-five dollars and twenty-six cents out of the twelve thousand five hundred dollars collected, being all of his *pro rata* part thereof according to his entire interest in the building, as so clearly, correctly and conclusively held by the authorities and as provided by the contract.

At no time and under no conceivable circumstances could the insurable interest of the contractor in the building have exceeded the earned portion of the contract price less the partial payments made thereon. So, the contractor was fully paid all that was due him under the contract, or which is the same thing, he was fully insured and received every cent of the insurance fund to which he was legally, equitably, or contractually entitled; and the interest of the owner was as fully insured as honesty would permit, and far more than was required of her by the most strict and technical interpretation of the contract against her. The subsequently developed fact that after and on account of the contractor's wilful breach and abandonment of his contract, it cost Mrs. Parsons more to rebuild than it would have cost her under the breached and abandoned contract, is no showing or evidence whatever that the building was not fairly and properly insured in faithful compliance with her obligations of the contract. Therefore neither by contract nor by law did the insurance stand in lieu of the admitted legal and contractual obligation to rebuild; nor did the

occurrence of the fire, on account of the insurance, discharge the surety, either by contract or by law.

The demurrer alleges that the bill and exhibits show that Mrs. Parsons, under the contract, was to retain fifteen per cent of the contract price for the benefit of the surety, that she did not perform this condition of the contract and that this discharged the surety.

Moreover, if, contrary to fact, Mrs. Parsons had paid something in excess of the payments required by the contract, the surety would be released only *pro tanto* as clearly, finally, and conclusively held in *Picard* v. *Shantz*, 70 Miss. 381.

*Hirsch, Dent & Landau, Brunini & Hirsch* and *J. B. Dabney*, for appellees.

I.   There was a mutual mistake made by appellant, the surety, and the contractor in naming Dr. W. H. Parsons, as the beneficiary and not Mrs. Parsons, and in referring to July 7th as the date of the contract instead of June 19.   Appellant charges that Mrs. Parsons was guilty of gross negligence.   The fact is that there was simply a clerical error in both instances and this is evident from the papers themselves and the attending circumstances.   We submit that there was really no necessity of going into a court of equity to reform the bond, nor to correct the date.   See 34 Cyc. 906.

There was concurrent jurisdiction in the court of law and in the court of equity.   See 13 C. J. 538 under ''Contracts,'' sub-head '' Clerical Errors and Omissions,'' stating:   ''The contract must be read according to the intent of the parties and in spite of clerical errors and omissions which, if allowed, would change that intention.''   In support of this text, see: *Gray* v. *Roden*, 24 Miss. 667; *Gaulding* v. *Baker* (Ga.), 71 S. E. 1018; *Tillman* v. *J. E. Webb & Co.*, 87 S. E. 904; *Warrum et al.* v. *White* (Ind.), 86 N. E. 959; *Draper et al.* v. *Miller* (Kan.), 140 Pac. 890; *Oleon et al.* v. *Rosenbloom* (Pa.), 93 Atl. 473; *Beckham*

346    U. S. Fid. & Guar. Co. v. Parsons. [Sup. Ct.

Brief for Appellees.    [147 Miss.

*et al.* v. *Scott et al.* (Tex.), 142 S. W. 80; 2 Elliott on Contracts (1913), sec. 1508; 2 Page on Contracts, sec. 1118; *Noon* v. *Mironski,* 58 Wash. 453, 108 Pac. 1069; 1 Elliott on Evidence, sections 576-605.

For a further discussion of the subject respecting the construction of contracts and the rules relative thereto, see *Caine* v. *Hagenbarth,* 37 Utah 69, 106 Pac. 945; *Burt·* v. *Stringfellow et al.* (Utah), 143 Pac. 234; *City of Bridgeton* v. *Fidelity & Deposit Co. of Maryland* (N. J.), 96 Atl. 918; *Sheetz* v. *Price* (Mo.), 136 S. W. 733; *Wallis Iron Works* v. *Monmouth Park Ass'n,* 26 Atl. 140; *Schroeder* v. *Griggs* (Kan.), 102 Pac. 469; *Leonard's Adm'r* v. *Cowling* (Ky.), 93 S. W. 909.; *Arnett et al.* v. *Williams* (Mo.), 125 S. W. 1154; *Pac. Surety Co. of Cal.* v. *Toye* (Mass.), 112 N. E. 653; 13 C. J. 521, 525, 528, 535, 542, 545.; *Home Mut. Fire Ins. Co.* v. *Pittman,* 111 Miss. 420; *Spencer* v. *Spencer,* 115 Miss. 71, 75 So. 770; *McAllister* v. *Richardson,* 103 Miss. 418, 60 So. 562; *Brimm* v. *McGee,* 119 Miss. 52, 80 So. 379; *Hart* v. *Gardner,* 74 Miss. 153; *Waddell* v. *DeJet,* 76 Miss. 104; *Spengler* v. *Stiles-Tull Lbr. Co.,* 94 Miss. 780; *Ins. Co.* v. *Hoffheimer,* 46 Miss. 645; *Dunbar* v. *Newman,* 46 Miss. 231; *Jones* v. *Miss. Farm. Co.,* 116 Miss. 295.

These appellees have sought to demonstrate to the court that there was absolutely no necessity whatever to seek a reformation of the bond contract at the hands of a court of equity, but the complainant in the court below took the safer course and sought reformation by a suit in equity.

II.    Chapter 128, Laws of 1918, is not unconstitutional. Review these decisions: *Cole Mfg. Co.* v. *Falls,* 90 Tenn. 466; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Eq. Surety Co.* v. *Stemmon,* 239 S. W. 1039; *Great Southern Hotel Co.* v. *Jones,* 193 U. S. 532; *Rio Grande Lbr. Co.* v. *Darke,* 167 Pac. 241; *Hess* v. *Denman Co.,* 218 S. W. 162.

These Mississippi cases are controlling: *Dotson* v. *Western Union Tel. Co.,* 97 Miss. 104; *Oliver Const. Co.*

v. *Dancy,* 137 Miss. 474; and *State* v. *Newman Lbr. Co.,* 103 Miss. 263.  For decisions from other state courts, see: *Alfred Hiller Co.* v. *Hotel Grunewald,* 70 So. 234; *Atl. Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186; *Merchants Mut. Auto Ins. Co.* v. *Smart,* 267 U. S. 126; *McGuire* v. *Chicago, etc., R. R. Co.,* L. R. A. (N. S.) 706; *Robinson Lbr. Co.* v. *Burton,* 54 So. 582; *Turner Washington* v. *Atl. Coast L. R. Co.,* 38 L. R. A. (N. S.) 867; *Wight* v. *Traders Finance Co.,* 125 Atl. 881.

For miscellaneous authorities on this constitutional question, see: 12 C. J. 951; 12 C. J. 1200; *Edwards* v. *Kearzey,* 96 U. S. 595; *John Hancock Mut. Ins. Co.* v. *Warren,* 181 U. S. 73; *Provident Inst. for Savings* v. *Jersey City,* 113 U. S. 506.

McGowen, J., delivered the opinion of the court.

Appellee Mrs. Edna Earl Parsons, hereinafter called "owner," exhibited her bill against the defendant, the United States Fidelity & Guaranty Company, hereinafter called "surety," and J. W. McNeill, hereinafter called "contractor," and certain materialmen, to-wit, the Vicksburg Lumber Company, Enterprise Plumbing & Metal Works, the Sanitary Plumbing Company, Cambre Bros., Wright Bros. Hardware Company, Success Sand & Gravel Company, H. H. Ludke, and Jones Drug Company, the aggregate of whose claims in a certain building contract totals four thousand one hundred forty dollars and eighty-four cents.  The bill alleged that the building contract had been executed by J. W. McNeill and herself for the construction of a dwelling house on a lot owned by Mrs. Parsons, said contract being made Exhibit A to the bill and a part thereof, by which instrument the contractor agreed to furnish all labor and material at his own expense, and within a reasonable time to construct, complete, and deliver to the owner a dwelling house as described in the specifications and contract.  The bill further alleged that on or about July 7, 1924, the con-

tractor applied to the surety company to make his bond as required of him by said contract, and that the contractor and surety company delivered to the owner, as if in compliance with said contract, a bond in writing, for the principal sum of nine thousand dollars, which bond was attached to the bill and made a part thereof. The bill further charged that by inadvertence, oversight, and mistake, on the part of respondents J. W. McNeill and the United States Fidelity & Guaranty Company, the name "W. H. Parsons" was inserted in the bond instead of "Edna Earl Parsons," and that the bond was accepted by the owner with the error and mistake therein, and relied on, without noticing said error and mistake, until some time after a fire which occurred November 3, 1924; that it was the intention of the contractor and the surety company to name Mrs. Edna Earl Parsons as obligee, and not her husband, and it was the full intention and purpose of all the parties that Mrs. Parsons should be the obligee in said instrument. In like manner, the bill charged that, by mutual mistake, the date of the contract mentioned in the bond was set forth as July 7, 1924, when in truth and in fact it was the intention of said bond to guarantee performance of said contract, made Exhibit A to the bill, June 19, 1924; that all parties intended so to do; and that neither mistake was noticed by the owner until as, above stated. The bill further alleged that said bond should be corrected in these particulars so that it would conform to the mutual purpose and the mutual attempt and intention of said parties, owner, contractor, and surety company.

It was further alleged that the contractor undertook the performance of the contract, and that the owner, at all times and in every respect, promptly and faithfully observed, performed, and carried out to the letter and spirit each and every term, provision, agreement, condition, covenant, promise, or obligation made, assumed, and undertaken by her under said contract, as well as the conditions imposed on the owner by the bond, and that

before the house was completed by the contractor and accepted by the owner the partly constructed and unfinished dwelling house was totally destroyed by fire on or about November 3, 1924, without any fault on the part of the owner; that up to the date of the fire the owner had, in strict accordance with said contract, paid the contractor in prescribed installments for labor and material furnished in and about the erection of said house and the specified price therefor, the total sum of nine thousand one hundred eighty-five dollars and twenty-six cents, leaving a difference of seventy-nine dollars and seventy-four cents due the contractor on the full amount of the contract price of said house completed, to-wit, nine thousand two hundred sixty-five dollars.

The bill charged the payment of nine thousand one hundred eighty-five dollars and twenty-six cents in performance of said contract on the part of the owner; the payment of four hundred sixty-three dollars and seventy-five cents for supervision of the construction of the destroyed house; two hundred seventy dollars for the architect whose services were used in the construction of said destroyed house; one hundred seventy-two dollars for insurance premiums on fire insurance issued by sundry companies for fire insurance; and for wiring said house one hundred seventy-seven dollars, making a total of one thousand eighty-three dollars and twenty-five cents expended by the owner on the house before its destruction.

The bill further alleged that as the construction of said dwelling house progressed, the owner duly effected insurance thereon against fire, aggregating twelve thousand five hundred dollars, which had been collected by the owner, and that the contractor had been credited with nine thousand one hundred eighty-five dollars and twenty-six cents, the total of the installment-payments made by the owner to the contractor prior to the fire, and that the contractor is indebted to the owner for his *pro rata* part of the premiums paid to the insurance company one

hundred twenty-six dollars and seventy-six cents. It further alleged that the contractor should have completed said house before the date of the fire, and after the fire the contractor further and completely breached said contract in that he failed and refused to give the owner another bond as required by the contract, with unimpaired penalty, or to rebuild and complete said house.

The bill further sets up the amounts claimed to be due by the contractor to laborers and materialmen mentioned, *supra,* alleging that the owner knew of these claims, but setting up that they had a right to recover on the contractor's bond and were made parties for that purpose; that the surety has elected not to rebuild or complete said house, but at all times has failed and refused to make, as contractor, a bond with unimpaired penalty, or to deliver same to the owner, and likewise has failed and refused to pay the materialmen and laborers, and failed to pay the amounts mentioned as due to the owner; that November 15, 1924, was fixed as the date of the extreme limit of a reasonable time in which to construct and deliver said house to the owner, which, if it had been so completed and delivered, would have cost the owner the total sum of ten thousand one hundred seventy-five dollars and seventy-five cents.

The bill alleged, then, that the owner had been forced to contract with another person because of said contractor's failure and refusal to comply with his contract for the rebuilding of said house and delivery to the owner, in accordance with said contract, which said rebuilding had cost the owner the sum of thirteen thousand three hundred ninety-eight dollars; that this was a fair, reasonable value of the construction of said building; that, in addition thereto, the owner had expended in said rebuilding the sum of six hundred sixty dollars for supervision, making a total of fourteen thousand fifty-eight dollars, and, in addition to that, the sum of four hundred seventy-five dollars and seventy-five cents, the fair rental value of the house from the time it should have been

completed until rebuilt and completed. The owner sued the contractor and the surety company for sustained damages in the sum of four thousand three hundred fifty-eight dollars, being the difference between the amount paid for the destroyed building and the total cost of the building as constructed by the owner, and also for the rental as stated, *supra,* and also for the *pro rata* part of the insurance premium. The prayer of the bill was for recovery of the above-stated sums, for the protection of laborers and materialmen, and for general relief.

The contents of the contract and bond, so far as material, will be referred to as the several points are disposed of.

The contractor answered the bill admitting the material allegations thereof. The several materialmen came in and answered and set up their claims.

Upon petition of the surety company, the chancellor ordered the case transferred or removed to the United States district court for the Western Division of the Southern District of Mississippi. From that court the cause was remanded to the chancery court of Warren county. Thereupon the bill was amended by making W. H. Parsons, the husband of the owner, a party complainant, who adopted and reiterated all statements, allegations, and exhibits of the original bill, and alleged that he, at all times, in and about the negotiations of conducting and completing of said contract and specifications involved herein, acted as agent for the owner, and that it was the mutual intention of all that Edna Earl Parsons should be a party to the contract and bond, that everything he did was to that end, and that it was the intention of all parties that such should be the case, and he disavowed any claim to any interest.

The materialmen made their answer to the original bill a cross-bill against defendants, the contractor and the surety company, suing for the aggregate amount stated, as being due them by the contractor on the contract here

involved. After which the surety company, having filed a demurrer, before amending, filed its amended demurrer.

The surety company filed a general demurrer, containing thirteen grounds, and also three special demurrers. The court overruled the general demurrer, and sustained special demurrer No. 1, and the surety company prosecutes an appeal to settle the principles of the case, having been refused an appeal by the lower court, and same having been granted by the Chief Justice of this court. The owner prosecutes an appeal from the decree of the court sustaining special demurrer No. 1.

In considering the many grounds of demurrer, we shall take them up in the order followed by counsel in their briefs:

First. The ninth ground of the demurrer challenges the right of the complainant, the owner, to reform the bond, because the bill shows that it was retained until after the time for completion and delivery of the constructed building under the contract, and therefore the owner and contractor were charged with notice of the contents of the bond, and are estopped from asserting any reformation, because the original contract appears on its face to have been entered into by W. H. Parsons, and not Edna Earl Parsons. In short, the bill does charge that the complainant, the owner, did not notice that the bond was payable to her husband and not to her until more than four months after the execution of the bond, and that the error and mistake were not discovered until after the fire, which was four months from its date. During that time the bond and contract were in the possession of the owner.

Our view of the bill is that it specifically charges that it was the intention of the owner, the contractor, and the surety company to execute the bond in favor of the owner, and that, by mutual mistake, the bond was executed in favor of W. H. Parsons, who, under the allegations of the bill, was clearly not the owner and had no interest in securing the bond, and no one else but the own-

March, 1927] U. S. Fid. & Guar. Co. *v.* Parsons.    353

147 Miss.]                    Opinion of the Court.

er was in contemplation by the parties at the time of the execution of the bond.

The demurrer confesses these facts to be true, and the general rule is that, as to fire insurance policies and indemnity bonds, parties are not precluded from correcting a mistake, although the paper was not read over, or was carelessly read by the beneficiary, but if one has carelessly read or otherwise failed to read, and moves promptly to have the mistake corrected so that the rights of the other parties to the contract will not be affected thereby, such mistake will be corrected; but there may be such gross negligence on the part of the parties seeking to reform the contract as to conclusively estop such parties from asserting a right to reform. No such gross negligence arises here.

We have read with interest the authorities cited from our own court and other courts on the question of estoppel, and the cases most relied on by appellant are not cases where, on demurrer, the facts were admitted as is the case here, and we think that line of cases has no application to a case where all the parties confess that the mistake was made by a mere omission of the word "Mrs." from the bond and incorrect date of the contract. The demurrer admits this bond was given to protect this contract made by this contractor and this owner, and that W. H. Parsons had no interest therein. It is true that the specifications are headed, "W. H. Parsons," and that his name occurs two or three times, but it is also true that the contract shows that complainant was the party contracting, as shown by the signature—her name executed by W. H. Parsons. It was purely a clerical error, committed by the contractor and the surety and not promptly observed by the owner, such as equity has always corrected when shown to be a mutual mistake. It would be profitless to review each of the cases cited, because the facts here do not call for authorities, save only the application of the general rule that the intention of the parties will be carried out in a court of conscience and equity,

where there can be no question as to what their real intention was and no question as to there being a mutual mistake. To hold otherwise would be to say that the surety in this case took no responsibility whatever when it undertook to execute this bond for this contractor, for the protection of this contract here involved. *Simmons* v. *North,* 3 Smedes & M. 67 ; *Brimm* v. *McGee,* 119 Miss. 52, 80 So. 379, and authorities there cited. We do not think there is any merit whatever in this contention.

Second. The fourth and tenth grounds of the demurrer challenge the right of the owner to demand a completed building, because of the provisions of Exhibit A as follows: ''The owner is to carry fire insurance on the building and the contractor is to pay his *pro rata* of the cost.'' And the demurrer asserts that this agreement in the contract for protection by fire insurance stands in lieu of the contract to erect a new building, and that this agreement for fire insurance relieves the contractor of the duty to rebuild, and shows that the contract was not breached by failure or refusal to rebuild, there being no express provision in the contract that in case of fire the contractor will rebuild. In other words, in the absence of an express provision, appellant contends that the provision for carrying fire insurance constitutes one of the exceptions to the general rule to the effect that the contract implies that the house shall be rebuilt in case it is destroyed by fire, and especially where the insurance has been carried and collected and retained by the owner, as shown in this bill.

On this question, the general rule is that where a house is destroyed by fire, and the contractor having agreed to furnish labor and material and construct a completed house for the owner, that he takes the risk of the incompleted house being destroyed by fire, unless he protects himself by expressly contracting that he shall not be held liable for an act of God, or other untoward circumstance, against which he is not willing to be bound.

March, 1927] U. S. Fid. & Guar. Co. *v.* Parsons.    355

147 Miss.]                    Opinion of the Court.

The common-law rule is that where the duty is imposed on a party for performance, his nonperformance shall be excused if it be rendered by an act of God, but where by his contract the party engages to do an act, it is deemed to be his own folly and fault that he does not expressly provide against such contingencies and exempt himself in certain events. In the instance of an absolute and general contract, the performance is not excused by an inevitable incident or other contingency. *Harmon* v. *Fleming,* 25 Miss. 135. Destruction by fire would excuse the nonperformance of a duty created by law, but would not excuse a breach of that duty created by contract. The party must contract against such contingencies, or abide and suffer the loss entailed by failure to so contract as to relieve himself from liability.

Counsel for appellants argue very forcibly and plausibly that the agreement on the part of the owner to carry insurance amounted to an exception to the general rule which we have stated. In the case of *Piaggio* v. *Somerville,* 119 Miss. 6, 80 So. 342, Chief Justice Smith, very clearly stated these exceptions where he said:

"There are, however, certain classes of events the occurring of which are said to excuse from performance because 'they are not within the contract,' for the reason that it cannot reasonably be supposed that either party would have so intended had they contemplated their occurrence when the contract was entered into, so that the promisor cannot be said to have accepted specifically nor promised unconditionally in respect to them. *Baily* v. *De Crespigny,* L. R. 4 Q. B. 185, 15 English Ruling Cases, 799. These three classes are: First, a subsequent change in the law, whereby performance becomes unlawful. *Baily* v. *DeCrespigny,* L. R. 4 Q. B. 180, 15 English Ruling Cases, 799; *Heart* v. *Tennessee Brewing Co.,* 121 Tenn. 69, 113 S. W. 364, 19 L. R. A. (N. S.) 964, 130 Am. St. Rep. 753. Second, the destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract.

*Taylor* v. *Caldwell*, 3 B. & S. 826; 32 L. J. Q. B. 164, 6 Eng. Rul. Cases, 603; *Dexter* v. *Norton*, 47 N. Y. 62, 7 Am. Rep. 415. And, third, the death or incapacitating illness of the promisor in a contract which has for its. object the rendering by him of personal services. *Robinson* v. *Davison*, L. R. 6 Ex. 269; *Smith* v *Preston*, 170 Ill. 179, 48 N. E. 688.''

Applying these exceptions to the case at bar, it cannot be said that the agreement to carry fire insurance is in any way related to any change of the law, or that the agreement to carry fire insurance renders impossible the obligation of the contractor to rebuild the house after destruction, nor can it be said that the fire insurance provision invokes the exception ''that the destruction from no default of either party of the specific thing, the continued existence of which is essential to the performance of the contract.'' It might be said on a casual reading that this building was destroyed by fire, and therefore the continued existence of that which is essential to the performance of the contract was essential and did apply. But there was no building in existence when the parties contracted originally, and the contract undertook to create that which did not exist before, and therefore that which he undertook and partially created was not originally essential to the performance of the contract, nor can it be said that the carrying of fire insurance has any relation to this exception. The application of this exception to the rule is illustrated in the books, as where a contractor undertakes to repair a building already in existence, and that which was in existence at the time the contract was entered into is destroyed, by fire, or otherwise, then this exception to the general rule is applicable because that upon which the contractor depends to add to or repair is nonexistent.

Another illustration is where a hotel building existed, and the contractor agreed to build an annex thereto, and before such annex was completed the hotel and annex were destroyed by fire. Then the exception applies, and

the contractor is under no duty to rebuild the annex, because that to which it was to be attached has been destroyed and the contractor is thus relieved; so far as he is concerned an impossibility has arisen.

As to the third exception, the death or incapacitating illness of the promisor does not appear here, nor does it appear that there was any contract for personal services, as contemplated by this exception. No case is cited in the extensive brief and argument upon which to predicate an exception to the general rule, and we do not think the agreement of the parties to insure the building provided for in the contract comes within the general rule or the exceptions.

Counsel argues that because the building partially created was destroyed by fire, being insured at the time, this would relieve the contractor and place him within the second exception quoted, *supra*. To our minds, the fact that the parties agreed to insure the house is an additional reason for saying that said parties contemplated a completed building, and a rebuilding of said house in case of its destruction by fire. What we have said, *supra*, applies to the case cited by appellants of *G. & S. I. R. R. Co.* v. *Horn*, 135 Miss. 804, 100 So. 381, 34 A. L. R. 814.

Under this head, counsel seems to argue that, because the amount of insurance carried by the owner, twelve thousand five hundred dollars, was not sufficient to rebuild the house, as shown by the allegations of the bill, therefore the owner took the risk, and, so far as the contractor is concerned, when the owner assumed the risk, the surety and the contractor were relieved from the strict performance of the contract, and relied upon the case of *Gallagher* v. *St. Patrick's Church*, 45 Neb. 535, 63 N. W. 864, in which case there was a contract to build, a bond executed for the erection and completion of the building by the contractor, in which contract it was stated that, ''the owner, . . . shall protect by insurance to cover its interest when payments have been made to contractor.'' The surety interposed the defense that the

owner had failed and neglected to insure as provided in the contract. In passing upon this question, the court there said that the church never carried over ten thousand dollars insurance on its property, and at the date of the fire the interest of the church in the property was fourteen thousand four hundred eighty-nine dollars and fifty-nine cents, which interest was greater than the amount of its claim against the surety company. The court held that in that event the failure of the church to keep said church insured to the extent of its interest therein was a complete defense for the sureties on the bond of the contractor. It was argued on behalf of the church that the amount of insurance in effect on the property was as much as any responsible insurance company would insure the property for, and the court said:

"We do not think this reply a good one in this respect. The church unconditionally contracted to insure the building to the extent of its interest. Having made this agreement, it was bound to perform it; and the fact that it was unable to procure insurance companies to write insurance on the building to the extent of its interest therein does not relieve it from the performance of its agreement. *Beebe* v. *Johnson,* 19 Wend. [N. Y.] 500 [32 Am. Dec. 518]."

Let it be remembered in the instant case that the contract price for the erection and completion of this building was nine thousand two hundred eighty-five dollars and the insurance carried by the owner was twelve thousand five hundred dollars. The fire occurred November 3, 1924, and thereafter it cost more than the amount of the insurance carried to rebuild the house according to the original contract. In the light of this statement, upon demurrer, could any court say that twelve thousand five hundred dollars was not adequate insurance so far as the surety and contractor were concerned, and that it did not protect, in every way, their interest as well as the owner's as appears from the allegations of the bill? Also let it be remembered that in the *St. Patrick's Church*

*Case cited, supra,* the owner contracted with the builder that it would carry insurance to the extent of its interest, and the facts found by the court show that the church did not carry insurance to the extent of its interest; but no such state of facts is shown in the case at bar, because the contract in this case did not provide, as will be seen above, that the owner would carry insurance to the extent of her interest, but only provided that the building should be insured. A reasonable construction of that clause in the contract would be that it would be insured for its value, and to the extent of the amount of the contractor's investment therein. In the instant case, if there had been inserted in the contract a clause that the owner should carry insurance on the building to the extent of her interest, then it could not be declared, as a fact, that twelve thousand five hundred dollars insurance on the building, while the record shows it cost, when completed, about ten thousand two hundred fifty dollars, was a failure to comply with the insurance feature of the contract. It will also be noted that in the *St. Patrick's Church Case, cited, supra,* the owner not only failed to insure to the amount of payments made by the contractor, but made no provision for its interest in the building.

We hold that nothing in this bill contains any statement that indicates that this building here being considered was not fully insured according to the terms of the contract. No failure of duty in this respect is shown upon the face of the bill, but, on the other hand, it is alleged that every detail of the contract, in all respects, was fully carried out.

Third. Next to be considered are the fifth and eleventh grounds of demurrer, which seem to challenge that the contractor owed and had not paid his *pro rata* part of the fire insurance premium. The court correctly overruled these two grounds of demurrer because they were general and did not go to the whole bill, and as to the argument of counsel that the provision for insurance together with the collection thereof by the owner was in

lieu of completing his contract, we think that has already been considered and disposed of.

Fourth.  The twelfth ground of demurrer is addressed to only a part of the bill, and was properly overruled, as we construe that demurrer to be special and to attack the right of the owner to bring in the materialmen under the terms of chapter 128, Laws of 1918, and will be considered hereafter.

Fifth.  The sixth ground of demurrer is that the bill and exhibits show that complainant, under the contract, was to retain fifteen per cent of the contract price for the benefit of the surety, and to insure completion of the contract, and the bill further shows that complainant did not perform this condition of the contract, so that in this defendant is relieved of further liability on his contract.  The feature of the contract to which appellant alludes is as follows:

"It shall be the duty of the owners to pay to the contractor not to exceed eighty-five per cent of the value of the materials delivered on the site, and one hundred per cent of the pay rolls on the building every week after the first materials delivered or the first work done. These amounts are to be ascertained in the manner prescribed under the head, 'Duties of the Contractor.' When the building is complete and accepted the owners shall pay the contractor the remainder of the contract price that may be due him. It is agreed that the amount reserved shall be held by the owner to protect him against all damages."

The bill charges, as to this feature, that up to the date of the fire, the owner had complied in strict accordance with the contract as to labor and material and the specified price therefor.

In the first place, it is obvious that the demurrer did not accurately state the contract.  This contract does not provide for the retention of fifteen per cent of the contract price, and it cannot be distorted into meaning that.  It distinctly stipulates on the other hand, that the

owner is permitted, under the contract, and bound to pay as "progress" money, not to exceed eighty-five per cent of the materials delivered on the site and one hundred per cent of the pay rolls. It is alleged also in the bill that there remains to be paid for material one-half of the contract price of the completed building, four thousand one hundred forty dollars, and there is no allegation as to the amount of the weekly pay rolls, but it is obvious that the rule in the case of *Picard* v. *Shantz,* 70 Miss. 381, 12 So. 544, cannot be applied here, unless it be shown or proven that the contract was not observed by the owner in the matter of payments and that overpayments were made to the contractor. The bill shows to the contrary. This question will be more properly raised, however, as a matter of defense in the case, if it should develop on the trial of the case that overpayments had been made. Then the chancellor will apply the rule in the *Picard* v. *Shantz case, supra.*

Counsel cites other cases wherein there is a specific contract for "progress" payments and for specific retention of fifteen per cent. Such is not the contract before us, and these authorities have no application to the case at bar.

Sixth. Special demurrers 2 and 3 challenge the right of the owner to charge the contractor and the surety company with the amount paid the supervising architect for the erection of the second building, and also the fair rental value of the premises for failure to deliver within a reasonable time the completed building.

In a suit against a surety and contractor to require performance of a building contract where the building was to be completed, and the performance of the contract was guaranteed by the surety company, and there was a breach of the contract on the first building being destroyed, the contract was thereby breached, and reasonable fees for the supervision of the construction of a new building are allowed. 9 C. J. 815 *et seq.,* and authorities here cited. We think also that of loss of rents by

the owner should be recoverable for such reasonable time after the time the building should have been completed under the contract, as will permit the owner to complete the building, provided he does so promptly, and within a reasonable time. 9 C. J. 812.

The owner asserted in her bill that she was entitled to retain the amount of excess insurance effected and collected above the costs of the destroyed building belonging to her; the special demurrer challenged this and asserted that, as a matter of law, the contractor and his sureties were entitled to this money and to have it applied to the costs of the new building if same was demanded under the contract. The chancellor sustained the contention of the contractor and sustained the special demurrer. The conclusion of the chancellor was correct.

The case of *Anderson* v. *Shattuck,* 76 N. H. 240, 81 A. 781, is not authority here, for the reason that under the contract there in issue, the owner was not entitled to demand a new building for the reason that an annex to an existing hotel was contracted to be erected, and the partially constructed annex and the old building were both destroyed, and the annex could not be rebuilt at the expense of the contractor. Here in this case the owner contends that he is entitled to a new building as well as the excess of insurance arising from the old building. That would be inequitable and unjust. The maxim, "he who seeks equity must do equity," applies here, and the said excess insurance must be applied to the erection of the new house. She cannot "eat the cake and have it too."

Coming now to the appeal of the surety company from the order overruling the demurrer to the cross-bill of the materialmen, which we conceive mainly involves section 3, chapter 128, Laws of 1918, reading as follows:

"That when any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such

person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond; and any such person who has furnished labor or materials used therein, for which payment has not been made, shall have the rights to intervene and be made a party to any action instituted on such bond, and to have his rights adjudicated in such action and judgment rendered thereon subject, however, to the priority of the rights or claim for damages or otherwise, of the obligee. If the full amount of the liability of the surety thereon is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the obligee, the remainder shall be distributed *pro rata* among said intervenors. The bond herein provided for may be made by any surety company authorized to do business in the state of Mississippi.''

Section 1 of the act fixes a lien for materialmen and subcontractors for material furnished or labor performed upon notice of balance due contractor and all parties interested sharing *pro rata* therein; in short, amends section 2434, Hemingway's Code (section 3074, Code of 1906), to conform to this court's construction of section 3072, Code of 1906.

Section 2 of the act makes an assignment by the master workmen subordinate to the rights of the above class of subcontractors, materialmen, etc., as well as the owner, and provides that section 2 is not in force in cases where

364 U. S. Fid. & Guar. Co. *v.* Parsons. [Sup. Ct.

Opinion of the Court. [147 Miss.

the bond provided for in section 3 is given. The other sections of the act provide the procedure.

The cross-bill, as finally amended, set up claims for material furnished and labor done on the building of Mrs. Edna Earl Parsons, the owner, under the contract and bond here in controversy. They bottomed their claims, in separate cross-bills, upon this chapter above cited. The demurrer asserted that said act is discriminatory, unconstitutional, invalid and void: First, because it violates the Fourteenth Amendment to the Constitution of the United States, section 1, in that it deprives appellant and other citizens of their liberty and property without due process of law; second, it abridges the privileges and immunities of appellant and others; third, it deprives appellant of its liberty and property without due process of law; fourth, it denies appellant the equal protection of the law; fifth, it is violative of that portion of section 2, article 6, of the Constitution of the United States which makes that instrument the supreme law of the land, and that it violates the sections of the state and Federal Constitutions which prohibit any law impairing the obligation of a contract, and violates section 24 of the state Constitution.

We eliminate from consideration as not raising any serious question all of the alleged violations of state and Federal Constitutions except the Fourteenth Amendment to the Constitution of the United States, for the reasons assigned, as above stated. The real question here presented is whether or not, under the Fourteenth Amendment, the state is authorized, under its police power, to regulate building contracts, with the manifest and obvious purpose of protecting therein the class denominated as materialmen and laborers.

It is clear that as to contracts entered into subsequent to its enactment, chapter 128, Laws of 1918, is read into the contract. *Western Assurance Co.* v. *Phelps,* 77 Miss. 625, 27 So. 745.

Counsel for appellant really bases his contention that the statute is unconstitutional upon the theory that section 3 of the act abridges liberty of contract, and cites *Gibbs* v. *Tally,* 133 Cal. 373, 65 P. 970, and the cases from that court which follow it, to-wit, *Shaughnessy* v. *American Surety Co.,* 138 Cal. 543, 69 P. 250, 71 P. 701; *Montague & Co.* v. *Furness,* 145 Cal. 205, 78 P. 640; *San Francisco Lumber Co.* v. *Bibb,* 139 Cal. 192, 72 P. 964; *Id.,* 139 Cal. 325, 73 P. 864; *Equitable Life Ins. Co.* v. *Stemmons* (Tex. Civ. App.), 239 S. W. 1039; and he also relies on *Hess* v. *Denman Co.* (Tex. Civ. App.), 218 S. W. 162, from the Texas court.

The *Gibbs* v. *Tally case, supra,* is the leading case relied upon and urged by counsel for the position that the act here in question is unconstitutional. In that case there was a claim of materialmen against the owner. The statute applied alike to the contractor and owner. The court said that it compelled the owner to become responsible for a liability he had not incurred, and which was not for his benefit; that it practically forbade him from improving his property by letting a contract unless he became liable therefor or furnished sureties who would be so liable.

The California statute above cited required that the contract, if not filed, was void, and the effect of the statute was to make the contractor the agent of the owner. Counsel says this California statute is very similar to ours, but we are unable to trace any essential similarity save that it requires a bond to be taken, whereas our statute permits a bond to be taken by the owner.

The statute we have under review does not require the owner to protect himself with a bond. It only provides that, if he takes bond, having put all the stipulations in the contract he desires, that the bond must inure to the benefit of the laborers and materialmen, not in violation of the obligee's rights, but subservient thereto, and we are unable to perceive that the requiring of this stipulation in this bond is other than for the benefit of the

owner and requires the contractor to do that which he was legally and morally required to do, pay his debts, and the surety, with the law staring him in the face, may or may not thus undertake the indemnity of his principal, for the surety's right to contract is not impaired nor is his liberty to contract abridged or interfered with.

In the case of *Hess* v. *Denman Lumber Co.* (Tex. Civ. App.), 218 S. W. 162, a Texas statute providing for and requiring a bond to be taken by the owner from a contractor to secure performance of a building contract was declared unconstitutional, the court saying, in effect, in that case, that the provisions of the Revised Statutes of 1911, article 5623, as amended by Acts 1915, chapter 143, requiring owner to contract with builder to give a bond conditioned as required by article 5623a as added by Acts of 1915, chapter 143, was held void, being an interference with constitutional liberty of contract. Said statute specifically provided that the owner shall cause to be executed a written contract for the erection, etc., and shall also cause to be executed and filed with the county clerk, before the work is begun, a good and sufficient bond, and further provides that said bond shall inure to the benefit of materialmen, laborers, and the subcontractor, regardless of whether or not they are secured by any lien. The court said:

"But the law requires the owner to contract with the contractor to give a bond. It is compulsory contract purely. We think that it is beyond the power of the legislature to require an owner to contract with the contractor to give a bond, as done in this very act, because it is interference with the law of the liberty of contract. If the owner does contract to have the contractor give a bond, he is at liberty to do as a subject-matter of contract; but if the owner does not so contract, a personal judgment cannot be rendered against him for not requiring the bond of the contractor."

It will be observed that this opinion is from the court of civil appeals of Texas, Texarkana, and in the case of

*Equitable Insurance Co.* v. *Stemmons,* 239 S. W. 1039, the supreme court of Texas denied a writ of error to the court of civil appeals, which had followed the Texarkana court in *Hess* v. *Denman* in holding that the statute requiring the owner of the property to execute a bond was unconstitutional, and the declination by that court of the writ of error was tantamount to the approval of the decision rendered by the court of appeals in *Hess* v. *Denman, supra,* that the statute was void.

The obvious distinction between our statute, section 3, and the Texas statute, is that our statute does not undertake, in any wise, to require the owner to demand and receive a bond for the performance of his contract, so that we do not think the Texas cases are authority upon which we could rely in this case.

On the other hand, the weight of authority sustains the validity of this statute. In the case of *Roystone* v. *Darling,* 171 Cal. 526, 154 P. 15, an act, very much more similar to ours than the one considered in the Tally case, was very vigorously challenged and held to be constitutional by the California court, with the Tally case, the Shaughnessy case, and the other cases following the Tally case in mind, and with express reference thereto, and the statute of 1911, considered in the Roystone case, contained a provision for a bond to be furnished by the contractor to the owner. The court, speaking of this latter statute, says:

"The law of 1911 here involved does not deprive the owner of the right to contract for the improvement of his property. It allows him to contract freely for such improvement and upon such terms as he may deem for his best interests. All it exacts from him, as a condition of such exemption from liability, and in order to make his contract effective, is that he shall provide a reasonable security for the constitutional lien given for labor and materials furnished to his contractor. It is not an unreasonable burden. It is one which we think the people have the power to impose and which we believe to be

within the scope of the constitutional mandate in the section conferring such liens, and of the police power.
. . .

"We are unable to perceive any constitutional objection to the expedient of providing that by the execution and filing of such bond the owner may be protected against the delinquencies of his contractor while, at the same time, lien claimants are afforded a security for the payment of their claims. We therefore hold that the foregoing decisions are not applicable, and that the provision for requiring this bond is not unconstitutional or invalid."

So that, the last utterance from the California court would be authority for upholding the constitutionality of this act, upon a statute more clearly like ours than the one declared unconstitutional in the Tally case.

Our investigation leads us to the conclusion that most of the appellate courts of this country, including the supreme court of the United States, have held that the liens granted by the legislature to subcontractors, mechanics, and materialmen, upon the land of the owner, are valid although the owner had no contractual relations with this class, and we think these are persuasive to sustain us in our view that the classification of mechanics, materialmen, and laborers as a class to be favored by the legislature is not an arbitrary classification, but is reasonable, and has for its object the welfare of the country at large, and quite generally recognized as valid. Especially is that true when we consider that on every hand by the thousands these contracts are multiplying, and such a vast number of our citizens are engaged as subcontractors, materialmen, and mechanics, and this class has been greatly augmented within the past decade. And especially is this true of our own state, where the sovereign itself is engaged in greater building enterprises than, perhaps, ever before in any one period, and from every hamlet, city, and town there comes the ring of the anvil, the tap of the hammer, and the music of the saw,

as they vie with each other in general construction and improvement work.

Building and construction is an essential under modern progressive conditions to the maintenance of commerce. Credit is as essential here in this line of endeavor as in other avenues of commerce. If the master workman or contractor were not assured of credit, then the surety would be called on in many instances to extend the credit so necessary to continued progressive movement or else complete the contract.

A review of the authorities on the validity of the mechanics' and materialmen's lien would seem to be unnecessary. The essence of these decisions is to the effect, first, that the labor and material used in building are for the direct benefit of the owner for which the property improved should be liable; second, that he is presumed to contract with full knowledge of the law, and he has the power to protect himself against loss by safeguarding the fund necessary to pay for the labor and materials. These expressions of the courts generally answer every attack made upon the constitutionality of these laws respecting a lien upon the land of the owner. It is difficult to differentiate a statute giving a lien on property of the owner and a statute providing that the owner may, if he sees proper, take security by requiring a bond for the faithful performance of the contract, and that when such bond is taken (he may take it or not as he pleases), such bond shall stand as security for the payment of the materialmen and mechanics and an action be brought thereon inuring to the benefit of this class.

In the case of *Great Southern Fireproof Hotel Co.* v. *Jones,* 193 U. S. 532, 24 S. Ct. 577, 48 L. Ed. 778, the supreme court of the United States held that liberty of contract is not unreasonably interfered with, nor is property taken without due process of law, by the provisions of Ohio Rev. Stat., sections 3184, 3185, and 3185a, giving a lien on the property of the owner to subcontractors, laborers, and those who furnish materials to be used by

the contractor in the execution of his contract with the owner; and this, too, at a time when the supreme court of the United States was advised that the Ohio supreme court had declared these statutes to be invalid and unconstitutional. The court devoted but little space to that question, but expressly approved the opinion of the circuit court of appeals in the case then under review and the opinion written by Judge Lurton, who cogently stated the reasons in support of the constitutionality of this statute, and cited *Jones* v. *Great Southern Fireproof Hotel Co.*, 86 F. 371, 30 C. C. A. 108. We also cite that case as being analogous in favor of the constitutionality of the statute here under review, there being, in our judgment, no such interference with ''liberty of contract'' contemplated by the Fourteenth Amendment in the statute here under review as to warrant this court in declaring it invalid. The reasoning and logic in support of the mechanics' lien statute is just as strong, just as cogent, just as powerful, and just as applicable to the statute here requiring that if a bond be taken by the owner to secure performance of the building contract, that it shall contain a stipulation protecting the materialmen and laborers subordinate to the rights of the obligee in the bond.

The case most nearly in point is that of *Rio Grande Lumber Co.* v. *Darke*, 50 Utah, 114, 167 P. 241, L. R. A. 1918A, 1193. Passing upon the validity of the Utah statute which requires the property owner when contracting for the erection of a building to take a bond to himself for the benefit of every person interested, and the supreme court of Utah stated that it was unable to find any reason for declaring the statute in question unconstitutional; they reviewed at length the California cases, and, quoting from the main California case, the Utah court said:

''The statute does not say who shall cause this bond to be executed, nor to whom it shall, in form, be made payable. It does not undertake that the contractor shall faithfully perform his contract. In short, there is in it

nothing which can be of advantage to the owner in any possible event.''

And the Utah court proceeds then to say, in effect, that the points made in the above quotation constitute the principal objection of the California court to the statute, and called attention to the fact that no portion of the above criticism could be justly applied to the Utah statutes. The court discussed the Roystone case, a later California case, and, after comparing and conceding the analogy between the materialmen's statute and the bond statute, the court comes to a conclusion in the following language:

''The bond, as in this case, is conditioned for the faithful performance of the contract and securing the payment of laborers and materialmen. If the owner requires the contractor to procure the statutory bond, he is protected against loss. If he does not, he becomes liable to laborers and materialmen if the contractor fails to pay them, even though he may have paid the contractor in full. He has his remedy in his own hands. Under the Mechanic's Lien Law, if he fails to hold the fund for the payment of laborers and materialmen, the same misfortune may occur. To use the epigrammatic expression of respondent's brief: 'Under the bond statute he must take care to exact the bond, and under the lien statute he must take care to hold the fund.' We are unable to find any reason for declaring the statute in question unconstitutional. Certainly, to say the least, reasonable doubts as to its unconstitutionality, after thoroughly considering the question, are such as to render it the imperative duty of the court to declare the statute valid as against the objections made. It is ordered by the court that the judgment be affirmed.''

When we consider that in the instant case this last-mentioned rule of construction must control where the constitutionality or validity of the statute is involved, then it is just as binding upon us as any other rule; and after fully and fairly considering the powers of legislative

bodies, and the limitation of their power under the Constitution, if there is a reasonable doubt in the mind of the court, then that doubt must be cast in favor of the validity of the act.

In the case of *Ogden* v. *Saunders,* 12 Wheat. 213, 6 L. Ed. 606, Mr. Justice Washington on this point said:

"But if I could rest my opinion in favor of the constitutionality of the law on which the question arises, on no other ground than this doubt so felt and acknowledged, that alone, would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body, by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt. This has always been the language of this court, when that subject has called for its decision."

In the case of *Dodson* v. *Telegraph Co.,* 97 Miss. 104, 52 So. 693, it was held that the Code of 1906, section 3127, providing that the statutes of limitation should not be changed by contract, and that the statutory periods should apply to all causes, etc., invalidates a stipulation in a contract with a telegraph company that it shall not be liable for errors or delays where a written claim is not presented within sixty days after a message is received by it for transmission.

In the case of *State* v. *J. J. Newman Lbr. Co.,* 103 Miss. 263, 60 So. 215, 45 L. R. A. (N. S.) 858, upon a suggestion of error as to the validity of the law prohibiting certain corporations from requiring their employees to work more than ten hours a day, etc., the validity of the law was upheld, in which case, Cook, J., said:

"We think there is some confusion in the minds of the bar and bench upon the so-called inalienable constitutional right to make contracts—to sell and to buy labor—and the lack of legislative authority to limit this right in the interest of the public welfare. *The liberty to contract is not a fundamental constitutional right.* [Italics ours.]

March, 1927] U. S. Fid. & Guar. Co. *v.* Parsons.     373

147 Miss.]                    Opinion of the Court.

The distinction is clearly stated thus: 'But the liberty of contract, like all other civil liberty, is subject to restraint and regulation on behalf of the public welfare, and to speak of a constitutional liberty of contract without careful qualification is· a vague and meaningless phrase. The liberty of contract yields readily to any of the acknowledged purposes of the police power, and it differs from fundamental constitutional rights, from the liberty of the body or person, from the right of property (including the obligation of existing contracts), from the right of equality, and from political liberty, in that it is neither a vested right, nor a right of definite extent, nor a right protected by specific constitutional guaranties.' " Freund, "Police Power," sections 499, 537.

The authorities persuade us that the statute here in question is protected by the police power of the state, does not violate the Fourteenth Amendment to the Constitution of the United States, or the due process clause thereof, is not an infringement of nor violates the sections of state and Federal Constitutions set forth in the demurrer. We deem the class favored therein as having been set up legally by many legislatures and upheld by the courts in many states, and as not being arbitrary or unreasonable. The court, at all times, must be reluctant to declare invalid the legislation upon which it is called to pass; the police power of the state is an essential to the enjoyment of the right of civil, religious, and political liberty.

In the case of *Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, the distinguished jurist, Mr. Justice Holmes, who now sits as the oldest, in point of years,. and, withal, one of the clearest of his age in all the world, a master of the history as well as the philosophy of the law, said:

"In answering that question, we must be cautious about pressing the broad words of the Fourteenth Amendment to a drily logical extreme. Many laws which it would

be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights. They more or less limit the liberty of the individual, or they diminish property to a certain extent. We have few scientifically certain criteria of legislation, and as it often is difficult to mark the line where what is called the police power of the states is limited by the Constitution of the United States, judges should be slow to read into the latter a *nolumus mutare* as against the lawmaking power. . . . It may be said in a general way that the police power extends to all the great public needs. *Camfield* v. *United States,* 167 U. S. 518, 17 S. Ct. 864, 42 L. Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of successful commerce.''

On all the questions presented here, we are of the opinion that the action of the chancellor on the several demurrers should be affirmed.

*Affirmed on direct and cross appeal, and remanded.*