AMERICAN OIL CO. *v.* RATLIFF'S SHEET METAL WORKS *et al.*

(Division A. Dec. 16, 1929. Suggestion of Error Overruled January 27, 1930.)

[125 So. 249. No. 28247.]

Hannah & Simrall, of Hattiesburg, for the appellant.

Hugh V. Wall and Naul & Yawn, of Brookhaven, for appellee.

A. A. Cohn, of Brookhaven, for appellee.

Brady, Dean & Hobbs, of Brookhaven, for the appellee.

Argued orally by **T. C. Hannah**, for appellant, and by **H. V. Wall** and **A. A. Cohn**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellees, Ratliff's Sheet Metal Works and other materialmen and laborers, exhibited their bill in the chancery court of Lincoln county against the appellant American Oil Company, Lee McDavitt, and the First National Bank of Brookhaven, Mississippi, seeking to recover from the American Oil Company, upon a contract for the erection of a garage entered into by it, as owner, and Lee McDavitt, as contractor and builder, the cost of material and labor furnished therefor.

The contract price was ten thousand twenty-three dollars and thirty-seven cents, for which price McDavitt was to furnish all the material and labor used in the construction of the building. The contract provided further that he was to pay for any extras, and that he was to be paid eighty-five per cent for the material and labor as the work progressed, fifteen per cent of which was to be retained for the protection of the American Oil Company until the building was completed. In addition to the stipulation in the written contract that McDavitt was to furnish all material and labor for, and do all things necessary to, the completion of the building for the stipulated contract price, there was this clause in the contract: "It is further agreed that the contractor shall furnish bond to the owners in an amount equal to the amount of the contract price of said building, which said bond is to protect the owners hereof against any and all claims that may arise against the contractor or against the building in any manner whatsoever." The contract was executed on the 23d day of February, 1928. In the notice to the bidders it was stated that a bond would be required, together with the contract, within fifteen days after the letting. On the 6th day of March,

1928, the contract was by McDavitt assigned to the First National Bank of Brookhaven, Mississippi. After the execution of the contract, McDavitt proceeded with the erection of the building, but never executed nor tendered to the American Oil Company any bond whatsoever. In the course of the construction of the building several materialmen furnished material amounting, in the aggregate, to more than six thousand dollars, and the money with which material was bought and labor paid by McDavitt was borrowed by him from the First National Bank of Brookhaven.

The bill charged that McDavitt and the American Oil Company had represented to the complainants that there was a solvent bond, which they knew, under the statute, protected the materialmen; that they acted upon this representation in furnishing the material used by the contractor, McDavitt, in the building; and that the representation was untrue. Complainants also alleged, in substance, that because of the failure to give this bond, the contract never became effectual, charging that the arrangement whereby McDavitt, the contractor, was permitted to proceed with the erection of the building without executing bond, operated as a fraud and an estoppel upon their rights. The bill asserted a lien by virtue of section 2580, Hemingway's Code 1927 (chap. 150, Laws 1926), as amended by chapter 137, Laws of 1928.

On or about June, 1928, when the building was at least seventy or probably eighty per cent completed, the several complainants served notice on the American Oil Company of their claim for material furnished to McDavitt, requiring the American Oil Company to withhold any further payment on the contract, asserting that they were entitled to payment of same, at which time there was an unpaid balance on the contract of four thousand five hundred twenty-three dollars and thirty-seven cents. Thereafter the owner of the building, the

American Oil Company, proceeded to buy material from some of the complainants, paid therefor, and completed the erection of the building; but in so doing it employed McDavitt to take charge of the construction of the building after several weeks' delay in the negotiation for the completion of same at a time when it knew that his bills for material contracted formerly had not been paid. The bill charges in general terms that this condition of affairs constituted a fraud upon the rights of the appellees, and, if not a fraud, the failure to take a bond and the course generally of appellant's dealing with McDavitt constituted an estoppel.

The bill further charged that the assignment of the contract to the First National Bank of Brookhaven was void, and that the American Oil Company had wrongfully paid money on that assignment to the bank for McDavitt. There was also an allegation that there were changes in the contract and in the plans and specifications.

The bill prayed for the enforcement of a lien on the building and lot owned by the American Oil Company, that the property be sold for the enforcement of the lien and an adjustment of the equities between the parties be had, and that the American Oil Company account to them with reference to all dealings with McDavitt.

The answers of McDavitt and the American Oil Company deny that any representations that either of them had executed bond was made. They further deny all charge of fraud and estoppel, and, in substance, the appellant company said that the contract was the usual one; that it completed the building only when McDavitt became unable to proceed with the same because of the notices served by the complainants; that at the time McDavitt became unable financially to proceed with the building, it had paid to him the sum of five thousand five hundred dollars; and that the balance on account of

said contract was four thousand five hundred twenty-three dollars and thirty-seven cents. Defendant, the appellant company, further said that McDavitt having notified it that he was unable financially to complete the said building in accordance with the contract, thereupon it took charge of the construction of the building and completed it as economically as was possible to do, and in doing so expended the sum of two thousand seven hundred twenty dollars and thirty-two cents, leaving a balance due on said contract of one thousand eight hundred three dollars and five cents.

It is further alleged in the answer of the appellant company that the building was to have been completed within a reasonable time, and that according to the understanding between the contractor and itself, the building should have been completed by the 1st day of May, 1928, but that McDavitt did not complete the building, and owing to the unnecessary delay, the building was not ready for occupancy until August 1, 1928. The appellant company also claims as damages the rental value of its property for three months at two hundred thirteen dollars per month, a total of six hundred thirty-nine dollars, on account of the breach of this contract; and deducting this amount from one thousand eight hundred three dollars, the balance due on said contract, the difference or balance due on the McDavitt contract, one thousand one hundred sixty-four dollars and five cents, was tendered into court by it.

The First National Bank made its answer a cross-bill, alleging that there was one thousand two hundred dollars due it, which money was furnished by it to McDavitt for the purchase of material used in the construction of the building, and sought a decree for the balance due it against the American Oil Company and McDavitt. The court entered a decree to the effect that inasmuch as there was no dispute as to the amount of the various

claims for material, each of the complainants, together with the cross-complainant, the First National Bank of Brookhaven, should have and recover from the American Oil Company the amount of their several claims, and declared a lien upon the building and lot and ordered same sold if the amount of the several claims was not paid within a stipulated time; and the American Oil Company prosecutes an appeal here therefrom.

There is no evidence in this record that McDavitt made any representation that the bond provided for in the contract had been executed to any one of the parties, nor is there evidence that the American Oil Company made any representations with reference to the bond. It is conceded that McDavitt did not tender to the American Oil Company any bond; and it is also conceded that if he had tendered the surety bond the parties had agreed that the American Oil Company would permit McDavitt to add the cost of the bond to the amount of the contract. It was stated by the chief officials of the American Oil Company that at the time the contract was executed the cost of the bond would be paid by the company. However, McDavitt never made any effort to procure the execution of the bond. The evidence further shows that when the notices were served by the complainants on the appellant to withhold any funds due McDavitt on his contract, he (McDavitt) then stated to the owner that he could not complete the building on account of being unable to get financial aid to complete the building; that after the contractor's statement that he was unable to complete the contract and some negotiations on the part of the appellant company, McDavitt, together with his tools and machinery, was employed by it for the price of nine dollars a day to superintend the construction of the building, which the record shows to be a reasonable price.

The main office of the American Oil Company was situated in Hattiesburg, Mississippi, but the building under construction was situated in Brookhaven. The record shows that the American Oil Company, through its legal representative, kept in close touch with the progress of the building.

The contract stipulated that payments by the American Oil Company to McDavitt should be made on certificates of the architect, but payments were made to him by the company without such certificates. There were some extras about which there is no contention.

After a careful reading of this record, there is no reason to doubt that when the owner took over this building for completion, he did so in a fair and economical manner; nor is there reason to doubt that McDavitt abandoned the contract because the notices served by the appellees deprived him of financial aid. Also there is no reason to doubt that the employment of McDavitt to complete the building, at nine dollars per day, was reasonable and in good faith.

The extent of the American Oil Company's liability under this statement of facts is the amount of the balance due upon the contract after having paid the reasonable costs of construction added to the amount advanced to McDavitt before the contract was breached. The contractor having executed no bond in this case, this was the extent of the owner's liability to the materialmen; there being no evidence of any sort of a contract between the materialmen and the appellant.

There is no question in this case but that the complainants in the court below extended their credit to McDavitt, each one of them knowing of the contract on which he was engaged, which provided that he was obligated to pay all such bills. They absolutely knew that the contract provided for a bond to be executed after the date of the contract, for each of them "assumed" that

the contract had been complied with; in other words, they assumed that the bond had been executed. They made no inquiry of McDavitt; they made no inquiry of the American Oil Company; they were put upon notice by the terms of the contract that the American Oil Company had contracted against any liability. If they were depending upon the bond, it was their duty to make inquiry, as the American Oil Company was under no duty to inform the materialmen in this case that it had waived that part of the contract with reference to a bond; nor was it under duty to notify the materialmen that no bond had been executed by McDavitt. The material in this case was furnished and credit extended at a time when they knew that he was engaged in the performance of this contract. There is no question but that McDavitt discontinued work when the notices were served. There is no element of fraud in this case on these facts.

Section 2580, Hemingway's Code 1927, section 3058, Code 1906, fixes a lien on the building and the land where the owner contracts the debt for the material and the labor. Under the following section, section 2581, this lien is limited to the contractor where there is a contract by which he is to furnish the material and to perform the labor.

Section 2596, Hemingway's Code 1927, section 3074, Code 1906, provides that materialmen and laborers, by giving notice to the owner of the land and the building to withhold further payments to the contractor until such materialmen and laborers have been paid, may enforce their claims for the amount so withheld and due upon the completion of the contract ratably,' provided that there are not sufficient funds to pay in full the sums due on the several claims, in which event it provides for the enforcement of the lien as against the building and lot.

If the bond stipulated for in the original contract had been executed, then section 3, chapter 128, Laws 1918,

would have applied thereto. The materialmen here never looked to the bond—for there was none—for the amount of their claims. But in the event no bond had been executed, then as to the materialmen, an assignment by the contractor would have been void as to them. In the case of U. S. Fidelity & Guaranty Co. v. Parsons, 147 Miss. 335, 112 So. 469, 53 A. L. R. 88, we upheld the constitutionality of this act, but carefully called attention to the fact that the owner was not required by the terms of the statute to have the bond provided for therein executed; in other words, the owner was free to require it, or not to do so, as he saw fit. If he required a bond, there would have been no liability whatever against him or his property, and we are unable to see how any theory of estoppel could operate here. As before said, there was no duty resting on the owner to notify the materialmen that the contractor had not executed a bond. It was the obligation of the contractor unquestionably in this case to have executed a bond; and if he had so done and tendered the same to the owner, another question might have arisen.

But it is said the written contract provided that the oil company would require, and McDavitt would execute and deliver, a bond for the performance of the contract, which was for the benefit of the materialmen. Therefore we think the materialmen have a right of action or cause of complaint upon that feature of the contract. The trouble with the contention of appellees is that the contract did not recite that the bond was or had been given, and a completed executed contract upon which they could act or which they were privileged to adopt had never been presented to them. The law did not require the contractor to execute a bond, nor the owner to require one. It was a matter about which the parties were at perfect liberty to contract, and the execution of a bond could be waived by both, of course, and the materialmen

not be affected thereby. This is a private building contract, not a public building contract. This is not a case where the performance bond was executed by the contractor and thereafter materialmen sold on the strength thereof and thereupon the parties to the original contract undertook to rescind or cancel the bond to the injury of a third person protected thereby. There being no sort of contractual relation ever effected between the owner and these materialmen, there is no basis for fixing liability as so sought to be done here.

No bond ever having been given and no material ever having been furnished on the faith that a bond had been executed, no right whatever accrued to any of the complainants under this statute. The only right they have under all this evidence is to share ratably in the amount of money tendered by the American Oil Company; and so far as it is concerned, the chancellor should have dismissed the bills of complaint against it.

As to the rights of the several parties in the fund tendered into court, including the First National Bank of Brookhaven, Mississippi, the lower court not having passed upon this proposition, we prefer to remand this case to the lower court, that it may determine the rights of the several complainants in the original bill and the First National Bank in and to the fund tendered into court, and for that purpose we remand the cause to be proceeded with in accordance with this opinion; in so far as the American Oil Company is concerned, the bills filed against it are dismissed.

Reversed, and judgment here for appellant; and remanded with instructions.